Brinkerhoi’I', 0. J.
On the second Tuesday of October, 1860, Anthony Casad was properly elected probate judge of, Logan county, for the full term of three years, and was duly qualified and commissioned. Having held the office until the eleventh of October, 1861, less than thirty days prior to the time of the next annual election for that year, he then died, leaving a vacancy in the office, which, on the next day, was filled by the governor, by the appointment of Samuel B. Taylor to the office, until a successor should be elected and qualified.
On the second Tuesday of October, 1862, the said Taylor was regularly elected to said office. But, the governor, instead of commissioning him for the unexpired term of Casad, as he ought to have done, commissioned him for the full term of three years. See Ohio ex rel. the Attorney General v. Taylor, in quo warranto, decided at this term. Ante, p. 137. This was done, doubtless, under a mistaken apprehension of the provisions of the constitution on the subject, and the same mistake seems to have been, and to have continued,general in the minds of the electors and officials of that county.
Accordingly, in the fall of 1863, when the general election of that year was approaching, at which an election of probate judge for the full term of three years, to succeed the full term to which Casad had been elected, and then temporarily filled by Taylor, was by law required to be holden, the sheriff of the county published, in conformity to law, his proclamation to the electors of the county, for the election, at the ensuing second Tuesday of October, of a governor, lieutenant governor, judge of the supreme court, auditor of state, treasurer of state, member of the board of public works, senator, member of th^ house of representatives, county treasurer, clerk of the court of common pleas, county recorder, county surveyor, infirmary directors, and county commissioner, but he omitted to make any mention therein of the election of a probate judge.
Antagonistic nominations of candidates for all the offices named in the sheriff’s proclamation, were openly made and *534 published in good time before the election, by different parties, but none was made or published f<?r the office of probate judge; and the great mass of the electors of the county, of every grade of intelligence, remained in actual ignorance of the fact, that the office was being balloted for, and that a probate judge ought, under the law, to be chosen at that election, until about three o’clock in the afternoon of the day of the election; when it became known in some, perhaps in most of the townships, that the plaintiff in error, Sidney B„ Foster, had been, and was being voted for, as a candidate for the office of probate judge.
The whole number of votes in the county cast at that election, was four thousand three hundred and thirty-nine. Nine hundred and thirteen votes, less than one fourth of the whole number, were cast for the plaintiff in error, for the office of probate judge; and no other votes were cast for that office.
In four out of seventeen townships in all, no votes were cast for probate judge; and in one other township, only two votes. Foster was, by the county canvassers declared to be duly elected; an-d the defendant in error, William D. Scarff, an elector of the county, having proceeded in the court of common pleas to contest the validity of the election of Foster, according to the statute, that court, upon the state of fact substantially as above given, adjudged the election of Foster to be invalid; and, the facts and evidence having been brought upon the record by bill of exceptions, this petition in error is prosecuted for the reversal of that judgment.
The question is, whether the court below erred in holding che election of Foster to be invalid.
The term, election, implies a choice by an «electoral body, at the time and substantially in the manner and with the safeguards provided by law, of a qualified person to an office. A vacancy may exist, or may be about to occur, in an office, which vacancy a given electoral body may have the unquestionable right to fill by election; and tnat electoral body may manifest its choice in a manner which leaves no doubt of the *535 fact of choice, but by means unknown to our laws — as by a viva voce vote, or by a vote at times and places not recognized by law, and yet no one would contend for the validity of such an election. The act of choice must be done, the election must be conducted, as prescribed by law, and under the safeguards w'hich the law affords. Without the existence of these, at least in substance, however unmistakable the fact of choice, there is no election in law. The act of election derives all its force and validity from its substantial conformity to the constitution and laws. Now, among the material provisions of. our constitution and laws in respect to elections, and not the least important among them, are the safeguards which they prescribe, by means of notice, against _ surprise upon the electoral body. The importance of this safeguard is distinctly recognized in the constitution, where, in the thirteenth section of the fourth article, it is provided, that, “ In case the office of any judge shall become vacant, before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and qualified; and such successor shall be elected for the unexpired term, at the first annual election that occurs more than thirty days after the vacancy shall have happened.” From this the implication is manifest, that the constitution intends that in respect to election to fill vacancies in the office of judge, at least thirty days’ time for notice of the election shall be afforded. And section four of the act of May 3,1852, “ to regulate the election of state and county officers”'(3 Ourwen’s,Stat. 1920), provides, “that it shall be the duty of the sheriff, and he is hereby required, fifteen days at least before the holding of any general election, or ten days before the holding of any special election, to give public notice by proclamation, throughout his county, of the time of holding such elections, and the number of officers at that time to be chosen; one copy of which shall be posted up at each of the places where the elections are appointed to be holden, and inserted in one newspaper published in the county, if any be published therein.”
*536 If this legislation, intended to guard the elector against surprise, be complied with, every elector finds posted up at his place of voting an enumeration of the offices to be voted for, and is forewarned by public proclamation in the newspaper. If it be not complied with, the case before us shows that the great body of the electors of a county may go to the polls, vote, and return to their homes in ignorance of existing or impending vacancies in office to be filled. But, it is said, the law presumes that every man knows the law, is bound by it whether he actually knows it or not; and one man is not to be deprived of his rights through his neighbor’s ignorance of the law. No one denies these general principles. But they, like other general legal principles, are not procrustean in their application. The constitution, and the legislation under it, recognize the policy of notice to electors other than that which arises from mere legal presumption. And the right of no.’man is hereby invaded; for no man has a right to filch an office, through the medium of a surprise upon the great body of the electors. Moreover, a knowledge of what vacancies in office exist or impend is not a matter of law merely; it is quite as much a matter of local history as of law; and the statute supposes that with this history the body of electors can not be’ expected to be at all times familiar. And in the case before us, the circumstances show that the mistake out of which the whole matter originated, involved the governor of the state as well as the electors of Logan county, and does no discredit to their character for intelligence. And the sheriff’s proclamation, by embracing many other offices, but omitting that of probate judge, was calculated to mislead instead of enlightening them.
Here then was an election held without notice to the body of the electors of Logan county, without notice such as the laws prescribe, and without notice in fact from any other source whatsoever. And, for this reason, and irrespective of any circumstances of concealment and stratagem, on the part of the few electors who did vote, which appear in the *537 record, we are of the opinion, that the election, as to probate judge, was irregular and invalid.
In deciding this case, however, we do not intend to go beyond the case before us, as presented by its own peculiar facts. We do not intend to hold, nor are we of opinion, that the notice by proclamation, as prescribed by law, is per se, and in all supposable cases, necessary to the validity of an election. If such were the law; it would be in the power of a ministerial officer, by his misfeasance, always to prevent a legal election. We have no doubt that where an election is held in other respects as prescribed by law, and notice in fact of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid. But where, as in this case, there was no notice, either by official proclamation, or in fact, and it is obvious that the great body of the electors were misled, for want of the official proclamation, its absence becomes such an irregularity as to prevent an actual choice by the electors, prevents an actual election, in the primary sense of that word, and renders invalid any semblance of an election, which may have been attempted by a few, and which must operate, if it be allowed to operate at all, as a surprise and fraud upon the rights of the many.
Judgment affirmed.
Scott, Day, White and Welch, JJ., concurred.